IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISMAIL MORA,<br><br>    Plaintiff,<br><br>    v.<br><br>CHRISTOPHER DESIMONE, et al.,<br><br>    Defendants. | No. 2:23-CV-0155-DJC-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' unopposed motion for summary judgment. See ECF No. 43.

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the

///

1

moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

2

court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## I. BACKGROUND

### A.  Plaintiff's Allegations

This action proceeds on Plaintiff Ismail Mora's verified original prisoner civil rights complaint under 42 U.S.C. § 1983 filed on January 24, 2023. See ECF No. 1. Plaintiff names the following as defendants: (1) Christopher DeSimone,[1] Correctional Officer, (2) Frank Neri, Correctional Officer, (3) Shawn Overby, Correctional Officer, and (4) the State of California. See id. at 2.

Plaintiff alleges that Defendant DeSimone assaulted Plaintiff when he walked over to Plaintiff and swung his fist multiple times. See id. at 3. Plaintiff tried to defend himself, and so Defendant Neri jumped in and began punching Plaintiff. See id. Both defendants took Plaintiff to the ground and continued to assault Plaintiff with their fists. See id. Defendant Overby approached Plaintiff and hit him while he was defenseless with his hands behind his back. See id. Plaintiff alleges that Defendants falsified reports, which hurt Plaintiff's life (sic). See id.

Plaintiff requests relief from the Court for injury compensation, which includes any mental health treatment. See id. Plaintiff claims chipped teeth and mental health issues from the alleged assault. See id. Plaintiff is asking for $10,000 for pain and suffering, $75,000 for punitive damages, $250,000 for mental anguish, and $250,000 for future medical bills. See id. In total, Plaintiff

---

[1] Defendant DeSimone is sued as "Desimone."

is requesting $585,000. See id.

B. **Procedural History**

On February 2, 2023, the Court determined that the complaint was appropriate for service. See ECF No. 10. On February 9, 2023, the Court issued findings and recommendations that the State of California be dismissed as immune under the Eleventh Amendment. See ECF No. 13. No objections to the February 9, 2023, findings and recommendations were filed and, on March 19, 2024, the District Judge adopted the findings and recommendations and dismissed the State of California as a defendant to this action. See ECF No. 42. Defendants DeSimone, Neri, and Overby filed their answer on May 8, 2023. See ECF No. 23.

On June 26, 2023, Defendants Desimone, Neri, and Overby filed a motion for judgment on the pleadings requesting judicial notice of Sacramento County Superior Court criminal case records from People v. Ismail Mora, Case No. 22FE015252, and an order dismissing Defendant Overby under Federal Rule of Civil Procedure 12(c) because Plaintiff's claim is barred by the favorable termination rule set forth in Heck v. Humphrey, 512 U.S. 477 (1994). See ECF No. 30. Plaintiff filed a statement of non-opposition on July 10, 2023. See ECF No. 31. On March 18, 2024, the District Judge issued an order granting Defendants' motion and dismissing Overby as a defendant. See ECF No. 42. Remaining Defendants DeSimone and Neri timely filed the currently pending motion for summary judgment on June 7, 2024. See ECF No. 43. Plaintiff has not filed an opposition.

**II. THE PARTIES' EVIDENCE**

Defendant's motion is supported by a Memorandum of Points and Authorities, ECF No. 43-1, a Statement of Undisputed Facts (SUF), ECF No. 43-3, and the declarations of Defendant DeSimone, ECF No. 43-4, Defendant Neri, ECF No. 43-5, and Deputy Attorney General Sean Lodholz, ECF No. 43-6. Defendants also rely on the attached exhibits and transcript of Plaintiff's deposition, which has been lodged.

///

///

Defendants assert that the following facts related to Plaintiff's excessive force claims are undisputed:

1. During medication pass at California State Prison, Sacramento (SAC) on the morning of April 14, 2022, Defendant Correctional Officers DeSimone and Neri witnessed Plaintiff wearing his shirt improperly around his face. (Decl. DeSimone ¶ 3; Decl. Neri ¶ 3.)

2. Plaintiff failed to comply with orders to wear his shirt the correct way. (Decl. DeSimone ¶ 3; Decl. Neri ¶ 3.)

3. Plaintiff admits that he was wearing his shirt incorrectly but says that he was using it to cover his face because he had run out of COVID masks. (Decl. Lodholz, Ex. A at 18:4-18.)

4. Plaintiff concedes he did not tell staff why he was wearing his shirt as a mask and that staff could have interpreted his response to orders to wear it correctly as noncompliance. (Decl. Lodholz, Ex. A at 59:18-60:23.)

5. Defendant Correctional Officer DeSimone told Plaintiff that his actions were disrespectful to female staff. (Decl. DeSimone ¶ 3; Decl. Lodholz, Ex. A at 19:2-7.)

6. According to Plaintiff, he turned away from Officer DeSimone to apologize to a nearby female staff member and when he looked back, Officer DeSimone was in his face, raising his fist, and looked "ready to sock" Plaintiff. (Decl. Lodholz, Ex. A at 19:2-25.)

7. Plaintiff alleges that he responded by swinging back at Officer DeSimone and the two started fighting. (Decl. Lodholz, Ex. A at 19:13-17.)

8. Plaintiff states that he was defending himself and, although he is not certain, acknowledges that he may have struck Officer DeSimone first. (Decl. Lodholz, Ex. A at 20:1-18.)

9. Plaintiff was mistaken as to Officer DeSimone's intention, because Officer DeSimone was not going to hit Plaintiff. (Decl. DeSimone ¶ 3.)

10. Officer DeSimone approached Plaintiff to place him in restraints and was moving to retrieve handcuffs from a pouch on the right side of his duty belt. (Decl. DeSimone ¶ 3.)

11. When Plaintiff struck Officer DeSimone, he responded by striking Plaintiff in the mouth to defend himself. (Decl. DeSimone ¶ 3.)

12. Officer Neri was standing behind Officer DeSimone as he approached Plaintiff and witnessed Plaintiff punch Officer DeSimone in the face. (Decl. Neri ¶ 3.)

13. Officer Neri ordered Plaintiff to get down, but he did not comply. (Decl. Neri ¶ 3.)

14. In order to gain compliance with his order and subdue Plaintiff, Officer Neri wrapped his arms around Plaintiff's lower body and assisted Officer DeSimone in forcing Plaintiff to the ground. (Decl. Neri ¶ 3; Decl. DeSimone ¶ 3.)

15. Plaintiff concedes that Officer Neri's initial intervention and use of force to take Plaintiff to the ground in response to his altercation with Officer DeSimone was reasonable. (Decl. Lodholz, Ex. A at 61:7-15, 62:19-64:4.)

16. Plaintiff alleges that the force used after he was on the ground was excessive because he stopped resisting once he was on the ground, but Defendants (including dismissed-Defendant Overby) continued to hit him. (ECF No. 1 at 3; Decl. Lodholz, Ex. A at 23:22-27:22, 61:7-15, 62:19-64:4.)

17. Defendants dispute the claim that Plaintiff stopped resisting once he was on the ground. (Decl. DeSimone ¶ 3; Decl. Neri ¶ 3.)

18. According to Defendants, once Plaintiff was on the ground he continued to resist by thrashing his body, kicking, and ignoring orders to stop. (Decl. DeSimone ¶ 3; Decl. Neri ¶ 3.)

19. Officer Overby responded by assisting Officers DeSimone and Neri to overcome Plaintiff's active resistance. (Decl. DeSimone ¶ 3; Decl. Neri ¶ 3.)

20. During their struggle with Plaintiff on the ground, DeSimone punched Plaintiff in the nose and Officer Neri punched Plaintiff twice in the abdomen in an effort to gain compliance with orders, overcome Plaintiff's continued resistance, and subdue him. (Decl. DeSimone ¶ 3; Decl. Neri ¶ 3.)

21. Because of their focus on Plaintiff, Officers DeSimone and Neri did not observe the force used by each other or Office Overby, but Officer Overby's report states that he struck Plaintiff three times with his baton. (Decl. Neri ¶ 3; Decl. DeSimone ¶ 3, Ex. A at Bates No. 24-25 (Overby Report).)

22. Additional staff arrived, secured Plaintiff in restraints, and took him for a medical evaluation. (Decl. Neri ¶ 4.)

23. The medical report of injury documented bleeding, cuts, and swelling to Plaintiff's face. (Decl. DeSimone, Ex. A at Bates Nos. 37, 57-58 (Pl.'s Form 7219 & injury photos).)

24. Plaintiff alleges that he re-chipped a previously damaged tooth during the incident but suffered no other permanent physical injury. (Decl. Lodholz, Ex. A at 31:18-33:21, 35:7-11.)

25. DeSimone was bleeding from a significant laceration to his right eyebrow and went to an outside hospital for treatment. (Decl. DeSimone ¶ 4, Ex. A at Bates Nos. 39, 47-49 (DeSimone's Form 7219 & Injury Photos).)

6

26. During the incident, Officer DeSimone used the force he believed was necessary to defend himself; and Officers DeSimone and Neri used force they believed was necessary to stop Plaintiff's attack, overcome Plaintiff's active resistance, gain compliance with lawful orders, and effect custody. (Decl. DeSimone ¶ 5; Decl. Neri ¶ 5.)

27. Plaintiff was criminally charged for battering Defendant DeSimone, Neri, and Overby during the incident. (ECF No. 30-1, Ex. A.)

28. Plaintiff subsequently pled no contest to violating California Penal Code section 69 with respect to Officer Overby during the incident and was sentenced to one-year and-four-months in prison. (ECF No. 30-1, Exs. B, C.)

29. Penal Code Section 69 states, "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment." (Cal. Pen. Code § 69(a).)

30. The criminal court found a factual basis for the plea based on Plaintiff's obstruction and resistance of Defendant Overby in the performance of his lawful duties during the incident. (ECF No. 30-1, Ex. D at 4:16-26, 7:17.)

ECF No. 43-3.

While Plaintiff has not filed any opposition to Defendants' motion for summary judgment, the Court will nonetheless consider Plaintiff's verified complaint as his declaration where appropriate.

### III. DISUCSSION

In their unopposed motion, Defendants argue that summary judgment is appropriate because: (1) the undisputed evidence shows that Defendants did not violate the Eighth Amendment; (2) Plaintiff's claim that he stopped resisting once on the ground and Defendants continued to use unnecessary force is barred under Heck v. Humphrey; and (3) Defendants are entitled to qualified immunity. See ECF No. 43-1. For the reasons discussed below, the Court agrees that summary judgment in Defendants' favor is appropriate.

///

///

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The lack of injuries is also probative. See Hudson, 503 U.S. at 7-9. Finally,

1  because the use of force relates to the prison's legitimate penological interest in maintaining
2  security and order, the court must be deferential to the conduct of prison officials.  See Whitley,
3  475 U.S. at 321-22.
4          Defendants contend the force used did not violate the Eighth Amendment because
5  the undisputed evidence shows that force was reasonably applied in a good-faith effort to subdue
6  Plaintiff, not maliciously or sadistically to cause Plaintiff harm. See ECF 43-1 at 8-9. According
7  to Defendants:

> During the incident, Officer DeSimone used the force he believed was necessary to defend himself; Officers DeSimone and Neri used force they believed was necessary to stop Plaintiff's attack, overcome Plaintiff's active resistance, gain compliance with lawful orders, and effect custody. (SUF No. 26.)

11  ECF No. 43-1, pg. 4.
12  Defendants further contend that Plaintiff's claim that Defendants used unnecessary force
13  after he stopped resisting once on the ground is barred under Heck v. Humphrey, 512
14  U.S. 477 (1994).
15          Defendants' argument is persuasive. The evidence establishes two distinct uses of
16  force at issue – Defendants' initial force used while Plaintiff was standing and Defendants' use of
17  force once Plaintiff was on the ground. It is undisputed that the incident ensued after Defendant
18  DeSimone issued a verbal warning to Plaintiff to properly wear his shirt. See ECF No. 43-1, pg.
19  2. Considering Plaintiff conceded that his non-response to orders to wear his shirt correctly could
20  have been interpreted as noncompliance, the Court finds that Defendant DeSimone reasonably
21  raised his response level by approaching Plaintiff with the intention to place him in restraints.
22  Additionally, given deference to the need to maintain security and order, the Court also finds the
23  incident at issue was undisputedly dangerous once punches were exchanged by Plaintiff and
24  Defendant DeSimone. As such, Defendant Neri reasonably stepped in to assist Defendant
25  DeSimone's efforts to subdue Plaintiff.  Furthermore, Plaintiff concedes, that Defendants Neri's
26  initial force was in good-faith and reasonable. Thus, Defendants' initial force used while Plaintiff
27  was standing was an appropriate application of force under the circumstances.
28  / / /

1          Defendants also argue that Plaintiff's claim that he stopped resisting once on the
2  ground and that Defendants' continued use of force was excessive is barred by Heck.  The Court
3  agrees.
4          When a state prisoner challenges the legality of his custody and the relief he seeks
5  is a determination that he is entitled to an earlier or immediate release, such a challenge is not
6  cognizable under 42 U.S.C. § 1983 and the prisoner's sole federal remedy is a petition for a writ
7  of habeas corpus.  See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Neal v. Shimoda,
8  131 F.3d 818, 824 (9th Cir. 1997); Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir.
9  1995) (per curiam).  Thus, where a § 1983 action seeking monetary damages or declaratory relief
10 alleges constitutional violations which would necessarily imply the invalidity of the prisoner's
11 underlying conviction or sentence, or the result of a prison disciplinary hearing resulting in
12 imposition of a sanction affecting the overall length of confinement, such a claim is not
13 cognizable under § 1983 unless the conviction or sentence has first been invalidated on appeal, by
14 habeas petition, or through some similar proceeding.  See Heck v. Humphrey, 512 U.S. 477, 483-
15 84 (1994) (concluding that § 1983 claim not cognizable because allegations were akin to
16 malicious prosecution action which includes as an element a finding that the criminal proceeding
17 was concluded in plaintiff's favor); Butterfield v. Bail, 120 F.3d 1023, 1024-25 (9th Cir. 1997)
18 (concluding that § 1983 claim not cognizable because allegations of procedural defects were an
19 attempt to challenge substantive result in parole hearing); cf. Neal, 131 F.3d at 824 (concluding
20 that § 1983 claim was cognizable because challenge was to conditions for parole eligibility and
21 not to any particular parole determination); cf. Wilkinson v. Dotson, 544 U.S. 74 (2005)
22 (concluding that § 1983 action seeking changes in procedures for determining when an inmate is
23 eligible for parole consideration not barred because changed procedures would hasten future
24 parole consideration and not affect any earlier parole determination under the prior procedures).
25          Defendants argue:

> Plaintiff was criminally charged for battering Defendants DeSimone, Neri, and Overby during the incident. (UF No. 27.) Plaintiff subsequently pled no contest to violating California Penal Code section 69 with respect to Officer Overby during the incident and was sentenced to one-year-and-four-months in prison. (UF No. 28.) Penal Code section 69

10

|   |   |
|---|---|
| 1 | states, "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment." (UF No. 29.) The criminal court found a factual basis for the plea based on Plaintiff's obstruction and resistance of Defendant Overby in the performance of his lawful duties during the incident. (UF No. 30.) |

ECF No. 43-1, pg. 4.

The evidence, which is not in dispute, shows that Plaintiff continued to resist once on the ground because dismissed Defendant Overby only responded once Plaintiff was already on the ground and the lawfulness of dismissed Defendant Overby's actions was necessarily an element of Plaintiff's conviction in state court for batter on a peace officer. That is, it would have been unlawful for dismissed Defendant Overby to use force against a prisoner who was not obstructing or resisting, and thus Plaintiff's conviction shows he continued to resist once on the ground during performance of dismissed Defendant Overby's lawful duties. This conviction has not been overturned on appeal or otherwise set aside. Given these facts, success on the merits of Plaintiff's excessive force claim would necessarily imply the invalidity of the state court conviction and, as such, the claim is barred. See Heck, 512 U.S. at 483.

The Court finds that Defendants have met their burden on summary judgment of demonstrating the absence of a genuine dispute of material fact. Defendants' undisputed evidence shows the force used by Defendant DeSimone and Defendant Neri was applied in good faith because Defendants' actions reflected their assessment of the reasonable level of force necessary to restore order at that time under the circumstances presented to them.  The undisputed evidence also shows that, as to Plaintiff's claims relating to the continued use of force once Plaintiff was on the ground, the claims are barred due to Plaintiff's state court conviction.

The burden therefore shifts to Plaintiff to provide sufficient evidence to create a genuine dispute of material fact.  As stated above, Plaintiff has not filed an opposition to Defendants' motion for summary judgment. Considering Plaintiff's complaint as his declaration, the Court finds nothing in Plaintiff's allegations which would create a genuine dispute as to the

issues of the reasonableness of the force used or application of the Heck bar. Therefore, Plaintiff cannot prevail on his Eighth Amendment excessive force claims and Defendant DeSimone and Neri are entitled to judgment in their favor as a matter of law.[2]

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Defendants' unopposed motion for summary judgment, ECF No. 43, be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 29, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

---

[2] Given these findings, it is not necessary to address whether Defendants are also entitled to qualified immunity.

12